IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY JEAN D.,**[1] | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-3882** |
| | : | |
| **CAROLYN COLVIN,** | : | |
| **Acting Commissioner** | : | |
| **of Social Security,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

**JOSÉ RAÚL ARTEAGA**                                           December 13, 2024
**United States Magistrate Judge**[2]

The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), denied, in part, Mary Jean D.'s application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, finding she was not disabled from April 1, 2020, onwards. Mary Jean D. seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g) and asks the Court to reverse and remand the Commissioner's decision.

---

[1] Mary Jean D. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Dec. 9, 2024).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.)

After careful review of the record, Mary Jean D.'s request is granted and the Commissioner's decision is vacated and remanded for further proceedings consistent with this Opinion.

I.    **BACKGROUND**

A.    <u>**Mary Jean D.'s Relevant Medical History.**</u>

Relevant to Mary Jean D.'s request for further review of the ALJ's benefits determination, she underwent three rounds of inpatient treatment and participated in intensive outpatient group therapy *after* her alleged disability onset date. On May 22, 2020, Mary Jean D. admitted herself to Mirmont Treatment Center with severe and dependent alcohol use disorder, alcohol withdrawal, anxiety disorder, and a history of gambling. (Tr. 1003–1004; *see also* Tr. 1635.)  She was treated with "small group therapy five times a week, individual therapy once a week, gender-specific groups twice a week, co-occurring group therapy twice a week, psychoeducational lectures daily, acupuncture and [m]edication five times a week in detox." (Tr. 1004.) Mary Jean D. completed Mirmont's treatment program around fourteen days later on June 5, 2020, and was discharged. (Tr. 1005.)

On August 26, 2020, Mary Jean D. was advised to admit herself to a Florida treatment facility. (Tr. 1626, 1633.)  She admitted herself to Honey Lake Clinic for detox and inpatient mental health treatment on October 9, 2020. (Tr. 1042.)  She was discharged on November 12, 2020, after a 34-day stay. (Tr. 1061.)

After a period of relative stability with a relapse and return to sobriety, "breakthrough anxieties," and medication adjustments (*see* Tr. 1893, 1897-1907, 1908-12),

Mary Jean D. agreed to seek higher level care through intensive outpatient group therapy at the Light Program between November 2021 and January 2022. (Tr. 1380–1592.) From November 2021 to December 2021, Mary Jean D. attended a four-hour group therapy session that met three to four times weekly via telehealth. (*See, e.g.*, Tr. 1456–1498.) From December 27, 2021, to January 12, 2022, Mary Jean D. began attending a two-hour morning group therapy session that met three times a week via telehealth. (Tr. 1500–1550.) She also had weekly thirty-minute scheduled appointments to manage her medication during this period.  (Tr. 1551–1592.)

Mary Jean D. was readmitted to Honey Lake Clinic in its Dual Diagnosis Program on January 17, 2022, for "the same complaints of addictions, depression, and trauma." (Tr. 1684–85.)  She was discharged on February 18, 2022, after 32 days. (Tr. 1660.)

 **B.**  <u>**The Administrative Proceedings and the ALJ's Decision.**</u>

Mary Jean D. protectively applied for DIB on October 20, 2021: after her first stay at Honey Lake Clinic and before beginning outpatient therapy with the Light Program. She alleged an April 1, 2020 onset, *i.e.*, when she was fifty years old.  (*See* Tr. 97-99, 206-07.)  She identified her impairments as bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, depression, and attention deficit hyperactivity disorder ("ADHD"). (*See* Tr. 115, 129.)  Mary Jean D. had finished some college and had past work "in admin positions."  (*See* Tr. 80.)

Her initial benefits application was denied on March 15, 2022 (Tr. 85) and denied again upon reconsideration on May 19, 2022.  (Tr. 96.)  Thereafter, she requested a hearing before an ALJ (Tr. 135-36) and a telephonic hearing was held on December 13, 2022.  (Tr.

38-75, 168, 199.)  Mary Jean D., represented by counsel, and a Vocational Expert ("VE") testified. (*See* Tr. 38-75.)

ALJ Regina Warren denied Mary Jean D.'s benefits application on January 4, 2023. (Tr. 21-32.)  The ALJ determined that Mary Jean D. met the insured status requirements of the Social Security Act through December 31, 2025 and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 23.) She found that Mary Jean D. had the following severe impairments: depression, bipolar disorder, anxiety disorder, personality disorder, eating disorder, and PTSD.  (*Id.*)  While the ALJ also considered evidence regarding Mary Jean D.'s history of alcohol use disorder, she determined that the record failed to establish that the disorder was a severe impairment because Mary Jean D. had "been sober since March 2021, which [wa]s less than twelve months after her alleged onset date." (Tr. 24.)

The ALJ then found that none of Mary Jean D.'s impairments or combination of impairments met or medically equaled a listed impairment, specifically including listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety disorders), 12.08 (personality disorders), and 12.15 (trauma and stressor related disorders).  (*Id.*)  In her view, Mary Jean D.'s mental impairments did not satisfy the mental health listings' Paragraph B criteria because Mary Jean D. had only moderate limitations in (1) understanding, remembering, or applying information, (2) interacting with others, (3) maintaining concentration, persistence, and pace, and (4) adapting or managing herself.  (Tr. 24-25.)  The ALJ also found that Mary Jean D. did not satisfy the Paragraph C

criteria because she routinely participated in daily activities such as shopping, cooking, driving, and attending Alcoholics Anonymous ("AA") meetings.  (Tr. 25.)

The ALJ determined that Mary Jean D. had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but she [wa]s limited to understanding, remembering, and carrying out simple routine tasks and instructions.  Additionally, she c[ould] concentrate, persist, and maintain pace for two-hour periods with normal breaks, make simple work-related decisions, and occasionally interact appropriately with coworkers, supervisors, and the public.  [Mary Jean D.] c[ould] adjust to occasional changes in the workplace and sustain an ordinary routine without special supervision.

(Tr. 26.)  The ALJ wrote that she considered "all of" Mary Jean D.'s "medically determinable impairments, including those that [we]re not severe," when assessing Mary Jean D.'s RFC. (Tr. 24.)

Relevant here, the ALJ explained that while Mary Jean D. had "been hospitalized and attended partial hospitalization programs at times, some of this treatment focused on her alcohol abuse"—which she had not found to be a severe impairment—and her treatment had "otherwise been fairly conservative."  (Tr. 27.)  She noted that Mary Jean D. "had experienced psychiatric issues since at least 2004," with a treatment history including inpatient treatment in July 2019, "including individual and group therapy . . . ." (*Id.*)  She also considered Mary Jean D.'s "[d]etoxification treatment" in May 2020, after she had lost her job and separated from her husband.  (Tr. 27.)  She acknowledged that Mary Jean D. had attended "a partial hospitalization program, including group therapy . . . for about two months" beginning in in November 2021, with

"a partially successful discharge" in January 2022. (Tr. 28.) She also noted that Mary Jean D. "received inpatient treatment again at Honey Lake Clinic for about one month in January and February 2022 for alcohol addiction, anxiety, depression, trauma, gambling disorder, and binge-eating disorder[.]" (*Id.*) In addition, she observed that Mary Jean D. attended outpatient individual sessions "from January to May 2022" and "continued with psychotherapy treatment throughout the rest of 2022." (*Id.*)

The ALJ found that Mary Jean D.'s "statements concerning the intensity, persistence, and limiting effects of [her alleged] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 27.) She noted that Mary Jean D.'s daily activities, *i.e.*, "driving, shopping, and attending AA meetings" showed that she could "still perform simple tasks in a public setting." (*Id.*) Ultimately, the ALJ concluded that Mary Jean D. had "no greater than moderate mental health functional limitations," explaining, in part, that the "focus" of her hospitalizations and partial hospitalization programs "*in part* was her alcohol use disorder," and that Mary Jean D. had "stopped drinking in March 2021." (Tr. 30 (emphasis added).)

The ALJ then found that Mary Jean D. could not perform her past work as an internal auditor, case aide, or administrative clerk. (Tr. 30.) Rather, Mary Jean D. could perform other work as a hand packager, price marker, or document scanner, all unskilled work. (Tr. 31.) As a result, the ALJ determined that Mary Jean D. was "not disabled" and not entitled to DIB. (Tr. 32.)

Mary Jean D. commenced this action seeking further review of the ALJ's determination on October 5, 2023. (ECF 1.)

## II.    LEGAL STANDARDS

### A.    <u>The Administrative Determination.</u>

Working through ALJs, the Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment;[3] (3) has impairment(s) that meet or medically equal a listed impairment;[4] (4) has the capacity to do past relevant work, considering her RFC;[5] and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.*

The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her

---

[3] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

Where mental impairments are at issue, the analysis includes additional inquiries. 20 C.F.R. § 404.1520a(a). The ALJ decides whether the claimant has any "medically determinable mental impairment(s)" in step two. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ determines "the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2); *see also* 20 C.F.R. § 404.1520a(d) (explaining that the ALJ uses the degree of functional limitation in determining the severity of the claimant's mental impairments).

The ALJ may rate the claimant's degree of limitation in "four broad functional areas" known as the "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(A)(2)(b) and (E). The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Alternatively, the "Paragraph C" criteria are met if the claimant has a "serious and persistent" mental disorder such that the claimant has "a medically documented history of the existence of the disorder over a period of at least two years," with evidence of both: (1) reliance on ongoing "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) . . . to diminish the symptoms and signs of [the claimant's] mental disorder;" and (2) "[m]arginal adjustment, that is, . . . minimal capacity to adapt to changes in [the claimant's]

environment or to demands that are not already part of [the claimant's] daily life." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(a)(2)(c) and (G).

## B.    Substantial Evidence Review.

Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[6] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g). Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 359 (3d Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir 2005). A "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). Courts defer to the ALJ's assessment

---

[6] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

of the evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citation omitted). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. Sept. 18, 2024). ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* The ALJ's opinion needs to include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). To decide whether the record was sufficiently developed the Court reads the ALJ's decision "as a whole." *Jones*, 364 F.3d at 505.

## III.    DISCUSSION

On appeal here, Mary Jean D. contends that the ALJ's RFC determination is not based on substantial evidence. (*See* ECF 6 at 3-16.) The Commissioner responds that the ALJ's detailed RFC assessment "fully accounted" for all of Mary Jean D.'s established mental functional limitations. (ECF 7 at 1.) Mindful of the threshold for substantial evidence—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek*, 587 U.S. at 103, a review of the record demonstrates that remand is required.

A.    **The ALJ Did Not Adequately Consider the Impact of Mary Jean D.'s
Treatment on Her Attendance When Determining Her RFC.**

Mary Jean D. argues that the ALJ erred by failing to consider the extent to which
her intensive treatment caused her to be absent from work during the relevant period.
(ECF 6 at 3.)  Mary Jean D. maintains the ALJ did not properly account for the duration
of her "extensive and time-consuming treatment" and that SSR 96-8P required the ALJ to
consider all relevant evidence, including *all* limitations resulting from treatment for her
impairments, such as absenteeism from work.  (ECF 6 at 7.)  *See also* SSR 96-8P, 1996 WL
374184 (July 2, 1996).  Mary Jean D. argues that the treatment she required for her
impairments left her "physically unable to be present in a workplace [for] more than
135 days" during a "less-than-two-year period[.]" (ECF 6 at 7.)  She contends reversal is
appropriate because the ALJ should have, and did not, address the impact of her absences
for treatment on her ability to work in light of the VE's testimony that typical employers
for unskilled work tolerate just one absence per month or twenty-four days in two years.
(*Id.* (citing Tr. 74).)

The Commissioner responds that the ALJ considered "the duration of Mary [Jean]
D.'s voluntary treatment, which sporadically occurred over a three-year period but could
not equate with a limitation that she would be absent more than once per month because
the explicit requirement of showing a 'disability' under the Act precludes such a
consideration." (ECF 7 at 7.)  According to the Commissioner, 42 U.S.C. § 423(d) required
Mary Jean D. to demonstrate "work-preclusive functional limitations that prevent[ed] her
from engaging in substantial gainful activity for twelve *consecutive* months." (ECF 7 at 7

(citing 42 U.S.C. §§ 423(d)(1)(A), (5)(A)).)  The Commissioner then argues that because the ALJ found that Mary Jean D.'s *inpatient* treatment did not last for twelve consecutive months, and "limitations from her severe impairments did not preclude [her] from performing other work during the relevant period," the ALJ was not required to consider Mary Jean D.'s sporadic inability to be physically present in a workplace.  (ECF 7 at 7-8.)

Mary Jean D. is correct that the ALJ's decision does not specifically address the impact of her absenteeism on her ability to work.  Instead, it states that Mary Jean D. attended inpatient and outpatient treatment with a focus "in part" on her alcohol use disorder and notes that Mary Jean D. was sober as of "March 2021, which is less than twelve months after her alleged onset date," suggesting that the ALJ might discount the impact of any treatment that Mary Jean D. had received for alcohol use disorder when making her disability determination.  (*See* Tr. 24, 27.)  The question is whether this apparent assumption undermines the ALJ's decision such that there is not substantial evidence to support it.

The Commissioner cites no cases to support her apparent contention that Mary Jean D. was required to demonstrate that she required twelve consecutive months of inpatient treatment to obtain benefits.  (*See* ECF 7 at 7-8.)  42 U.S.C. §§ 423(d)(1)(A) does not require this.  Instead, to qualify for DIB, Mary Jean D. needed to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . ha[d] lasted or c[ould] be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A).  Because the ALJ determined that Mary Jean D. was not capable of performing any past

relevant work, the burden shifted to the Commissioner to show that Mary Jean D. retained the capacity to perform other jobs that exist in significant numbers in the national economy. (Tr. 30.) On this question, the VE testified that an employer's "general tolerance for absences" in the types of jobs that existed in the national economy for an individual with Mary Jean D.'s age, education, work experience, and RFC would be "one time per month" as a "general rule. Anything beyond that is work preclusive." (Tr. 74.) Nevertheless, and despite the evidence of Mary Jean D.'s intermittent absences, the ALJ's decision did not address the VE's testimony.

A claimant who can engage in "substantial gainful activity" can perform "substantial services with reasonable regularity . . . ." *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987) (citation and internal quotation omitted). So, "[t]he extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage in substantial gainful activity." *Chiappa v. Sec'y of Dep't of Health, Ed. & Welfare*, 497 F. Supp. 356, 360 (S.D.N.Y. 1980); *see also Gurina v. Berryhill*, 336 F. Supp. 3d 524, 533 (E.D. Pa. 2018) ("Plaintiff's limitation in her ability to maintain attendance is . . . certainly a relevant factor in determining whether she is able to engage in gainful employment."); *Todd v. Berryhill*, No. 18-415, 2019 WL 1995494, at *2 (D. Del. May 6, 2019) ("[I]n addition to physical and mental limitations, the ALJ must consider the frequency of a claimant's impairment-related hospitalizations and medical appointments when determining whether the claimant is disabled."); *Moss v. Colvin*, No. 13-731, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("The ability to work on an intermittent basis is not ability to engage in substantial gainful activity; the Commissioner

must demonstrate that a claimant can engage in competitive employment with some reasonable regularity.")  As a result, remand has been held to be appropriate when an ALJ's decision does not discuss absenteeism, but absenteeism is relevant to the ALJ's determination.

For example, in *Kangas*, the Third Circuit held that remand was required for reconsideration of a finding that the plaintiff was able to engage in substantial gainful activity where the ALJ's decision "failed to evaluate the effect of [the claimant's] frequent hospitalizations on his ability to perform any work on a regular, continuing or sustained basis, a critical factor . . . ." 823 F.2d at 778.  Similarly, in *Hause v. Saul*, the court found that remand was appropriate based on an ALJ's failure "to address, analyze, or acknowledge evidence that suggested [the claimant] would be absent from work two days per week to attend therapy" when a VE had testified such a limitation "would preclude [the claimant] from obtaining or keeping a job in any area of employment." No. 16-0941, 2019 WL 5549525, at *1 (M.D. Pa. Aug. 29, 2019), report and recommendation approved and adopted by *Hause v. Saul*, No. 18-0941, 2019 WL 5550013 (M.D. Pa. Oct. 25, 2019).  As part of Hause's treatment plan for *inter alia*, depression and anxiety, he attended individual therapy twice weekly from 9:00 AM to 3:00 PM.  *Id.* 2019 WL 5549525 at *9.  Because there was other work he could do at step five, the ALJ declined to award benefits, however, the court ordered remand because the ALJ did not explain the discrepancy between Hause's treatment plan and the VE's testimony.  *Id.* at *10; *see also Todd*, 2019 WL 1995494, at *2 (remanding where the ALJ's decision failed to evaluate the effect of the claimant's "frequent medical appointments on her ability to sustain work");

14

*Ashe v. Berryhill*, No. 16-956, 2019 WL 1430243, at *9 (D. Del. Mar. 29, 2019) (remanding where the plaintiff "offered evidence of the number of absences required over the time in question—a number that the VE agreed exceeded the number employers would tolerate"—and the ALJ "never addressed Plaintiff's absences or whether those should be included in the RFC determination").

The issue of whether Mary Jean D.'s absences for treatment would have precluded her ability to engage in substantial gainful activity was relevant to the Commissioner's ultimate determination.  Considering the entire record, a reasonable mind would not find that the ALJ adequately explained why the VE's testimony about employers' lack of tolerance for absences did not disqualify Mary Jean D. from engaging in substantial gainful activity given the record evidence regarding the duration, frequency, and timing of the treatment she received, including inpatient and partial-inpatient programs and sometimes lengthy outpatient appointments during the workday.  (*See, e.g.*, Tr. 1380-1591 (group therapy and partial impatient hospitalization records from the Light Program); Tr. (1652-59 (Honey Lake Clinic inpatient treatment records); Tr. 1965-1985 (Inspire Behavior Health outpatient treatment records).)    Indeed, the ALJ provided no explanation at all.  Instead, she explained only that "[b]ased on the testimony of the vocational expert, . . . considering [Mary Jean D.'s] age, education, work experience, and residual functional capacity," Mary Jean D. was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32.)

Moreover, to the extent that the ALJ's ultimate determination rests on an assumption that Mary Jean D. did not have treatment needs relevant to her ability to make a successful adjustment to other work after she "stopped drinking in March 2021," because her treatment was "focused" on her alcohol use disorder, it lacks substantial evidence. (Tr. 30.) The ALJ's decision recognized that Mary Jean D. had treatment needs that were not only driven by her alcohol use disorder. The ALJ noted that when Mary Jean D. started impatient treatment in October 2020, she reported "[a]nxiety, panic attacks, and severe gambling addiction." (Tr. 27.) The ALJ relied on Mary Jean D.'s treatment notes from a two-month partial hospitalization, which included intensive and lengthy group therapy sessions at the Light Program to discuss Mary Jean D.'s depression and anxiety during the end of 2021. (Tr. 28.) The ALJ's decision acknowledged that Mary Jean D. received inpatient treatment for "about one month" in January and February 2022 for anxiety, depression, trauma, gambling-disorder, . . . binge eating disorder," *and* "alcohol addiction," *i.e.*, after she had been "sober." (Tr. 28 (emphasis added); *see* Tr. 24.) The ALJ also acknowledged that Mary Jean D. attended psychotherapy treatment "*throughout* the rest of 2022" and that, while she "typically presented with a stable affect with unremarkable mental status examination findings," severe alcohol use disorder "*remained diagnosed*" along with Bipolar II disorder, PTSD, and gambling disorder. (Tr. 28.) (emphasis added). The ALJ's decision does not address how any of this treatment—whether for a non-severe alcohol use disorder or for the other impairments that she found to be severe—impacted Mary Jean D.'s ability to be present at work as frequently as required, consistent with the VE's testimony. (Tr. 28.)

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where, as here, conflicting evidence has not been resolved and the ALJ has not met her burden of articulation by failing to discuss all relevant evidence, remand is appropriate. *See Fargnoli*, 247 F.3d at 40. On remand, the ALJ should explain the impact of Mary Jean D.'s treatment-related absences on her ability to perform jobs that exist in the national economy during the relevant period.[7]

**B.    The Court Will Not Consider Mary Jean D.'s Remaining Arguments.**

Mary Jean D. makes two other arguments in favor of remand. She challenges the sufficiency of the ALJ's consideration her treating therapist Dr. Jane Hart's opinions, including a May 13, 2022 Treatment Summary. (ECF 6 at 7-14.) She also contends the ALJ did not appropriately evaluate her alcohol use disorder in accordance with Social Security Ruling 3-2p. (*Id.* at 14-15.) The Court declines to consider either argument here because it has already determined that remand is appropriate and remand may produce a different result, making any further analysis moot. Mary Jean D. remains free to raise these issues in further administrative proceedings.

---

[7] The Court does not here decide that the evidence requires an award of benefits.

**IV.    CONCLUSION**

For the reasons stated above, Mary Jean D.s' request for review is GRANTED. The Commissioner's final decision is REVERSED and this matter is REMANDED for further proceedings consistent with this Opinion.[8]

An appropriate Order follows.

---

[8] Nothing in this Opinion should be deemed as expressing a view on whether the record requires an award of benefits.  Rather, that task remains the duty and province of the ALJ on remand.